UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
KINSALE INSURANCE COMPANY,             :        14cv7792(DLC)
                                       :
                    Plaintiff,         :        OPINION AND ORDER
                                       :
        -v-                            :
                                       :
OBMP NY, LLC, EDWARD GASKIN, SHAMEKKA  :
GREEN, JOHN IACONO, TAHIRY JOSE and    :
701 WEST 135TH STREET NEW YORK LLC,    :
                                       :
                    Defendants.        :
                                       :
-------------------------------------- X

APPEARANCES

For the plaintiff Kinsale Insurance Co.:
Helmut Beron
Wilson, Elser, Moskowitz, Edelman & Dicker
3 Gannett Drive
New York, NY 10017-5639

For the defendants Edward Gaskin and Shamekka Green:
Philip Monier, III
Monier Law Firm, PLLC
90 Park Avenue, Suite 1700
New York, NY 10016

DENISE COTE, District Judge:

     This case arises out of a March 31, 2014 shooting at a
nightclub operated by defendant OBMP NY, LLC ("OBMP").  Edward
Gaskin ("Gaskin") and Shamekka Green ("Green") were injured at
approximately 2 a.m. that morning, and have sued OBMP and others
in New York state court for negligence (the "Underlying
Action").  Gaskin and Green contend that an insurance policy
(the "Policy") between OBMP and plaintiff Kinsale Insurance

Company ("Kinsale") covers their injuries.

Kinsale seeks a declaratory judgment that the Policy was cancelled at 12:01 a.m. that morning, approximately two hours before Gaskin and Green's injuries occurred, and therefore it has no duty to defend the Underlying Action, and has no duty to indemnify OBMP or any other defendant for any damages awarded to Gaskin and/or Green.  In the alternative, Kinsale argues that even if it must indemnify OBMP, its potential liability is limited to $25,000 per occurrence under a provision of the Policy limiting liability for personal injuries caused by assault or battery.  Gaskin and Green argue that Kinsale's cancellation of the Policy was ineffective under New York Law, and that whether the assault and battery limitation applies to Green's injuries is a question of fact to be determined by a jury.

For the reasons that follow, Kinsale's motion for summary judgment is granted.

## **Background**

The following facts are undisputed, unless otherwise noted.

## **I.   The Incident of March 31, 2014**

Gaskin and Green were present at a nightclub/lounge called SUITE 135 in the early morning of March 31, 2014.  SUITE 135 was located at 701 West 135th Street, New York, New York, and was

operated by OBMP.  The building housing SUITE 135 was owned by
defendant 701 West 135th Street New York LLC ("701 LLC").  At
approximately 2:00 a.m., Gaskin was shot in the hand by a third-
party who was also present at SUITE 135.  Around the same time,
the patrons of SUITE 135 fled the building, and in doing so,
trampled and injured Green.

## II.  The Insurance Policy

OBMP was issued the Policy (commercial general liability
policy number 0100016612-0) by Kinsale.  Kinsale is a foreign,
eligible excess and surplus lines insurer in the State of New
York, is incorporated in Arkansas, and has its principal place
of business in Virginia.

Under the terms of the Policy, Kinsale agreed to "pay those
sums that the insured becomes legally obligated to pay as
damages because of 'bodily injury' or 'property damage' to which
this insurance applies."  Kinsale also agreed to "defend the
insured against any 'suit' seeking those damages," except a suit
"to which this insurance does not apply."  The terms "bodily
injury" and "property damage" are expressly limited to injuries
that occur "during the policy period."  The original policy
period listed on the Policy was from January 6, 2014 until
September 11, 2014.

The Policy also contained several provisions relating to
early cancellation of insurance coverage.  OBMP was permitted to

cancel the Policy by mailing advance written notice to Kinsale. Kinsale was permitted to cancel the Policy if OBMP failed to pay its premiums by "mailing or delivering . . . written notice of cancellation at least[] [t]en days before the effective date of the cancellation."  In the event that either party cancelled the Policy, the "[n]otice of cancellation will state the effective date of cancellation," and the Policy would end on that date. If Kinsale cancelled the Policy, it was required to mail the notice of cancellation to the last known mailing address of OBMP, and proof of mailing would suffice as proof of notice.

Under the Policy, OBMP agreed to pay premiums to Kinsale according to Kinsale's rates.  Kinsale was permitted to conduct a periodic audit to determine if additional premiums were owed and to notify OBMP of any unpaid balance.  Kinsale conducted an audit in January of 2014 and determined that OBMP owed additional premiums, which it communicated to OBMP via an insurance broker, Sheila Paulino.  As of March 18, 2014, OBMP had not paid the additional premiums it owed to Kinsale.

On March 18, 2014, Kinsale sent OBMP, via mail and OBMP's insurance agent, a notice of cancellation stating that the Policy would be cancelled effective "3/31/2014 at 12:01 a.m." The notice further stated that "on the date referenced above, coverage under your policy will terminate."  The notice was mailed to 701 West 135th Street, New York, New York 10031, which

4

was the last known address for OBMP that Kinsale was aware of.
The notice of cancellation was returned to Kinsale by the U.S.
Postal Service as undeliverable.  OBMP does not dispute,
however, that it had actual notice of the impending
cancellation.  In January of 2014, OBMP employee Heather Iacono
was aware of the unpaid premiums and attempted to negotiate a
payment plan to avoid the scheduled cancellation on March 31,
but no payment was made until April 9, nine days after the
cancellation of the Policy.  Effective March 31, Kinsale
cancelled the Policy.

## III.  The Underlying Action

On September 4, 2014, Gaskin and Green commenced the
Underlying Action in the Supreme Court of the State of New York,
Bronx County, against OBMP and other defendants.  The complaint
in the Underlying Action alleges that the defendants were
negligent in failing to prevent the injuries to Gaskin and Green
by providing inadequate security at SUITE 135.  On September 8,
2014, counsel for Gaskin and Green sent a letter to Kinsale
stating that they considered Kinsale's cancellation at 12:01
a.m. on March 31, 2014 to be ineffective and thus Gaskin and
Green's injuries were covered by the Policy.

## IV.  Procedural Background

On September 25, 2014, Kinsale filed the instant
declaratory judgment action, seeking a declaration that it had

no duty under the Policy to defend or indemnify defendants in the Underlying Action.  Gaskin and Green filed their answer on October 1, and also asserted five counterclaims against Kinsale, seeking (1) a declaration that the Policy remained in effect until midnight on March 31, (2) a declaration that Kinsale failed to comply with New York Insurance Law § 3426, (3) a declaration that Green's injuries are not subject to the assault endorsement in the Policy, (4) a declaration that the assault on Gaskin was not the proximate cause of Green's injuries, and (5) an award of attorney's fees.  The other defendants all filed their answers by December 19.  On April 30, 2015, Kinsale filed the pending motion for summary judgment.  On May 29, Gaskin and Green filed their opposition to the motion.  No other defendant opposed the motion.  The motion was fully submitted on June 26. On January 14, 2016, this case was reassigned to this Court.[1]

### Discussion

Summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary

---

[1] On February 24, Kinsale was ordered to show cause why this action should not be dismissed for lack of subject matter jurisdiction because the citizenship of 701 LLC was not adequately alleged.  On March 21, 701 LLC was dismissed as a defendant by stipulation of the parties.

judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Smith v. Cty. of Suffolk, 776 F.3d 114, 121 (2d Cir. 2015) (citation omitted).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party.  Eastman Kodak Co. v. Image Tech. Servs.,Inc., 504 U.S. 451, 456 (1992); Gemmink v. Jay Peak Inc., 807 F.3d. 46, 48 (2d Cir. 2015).

Once the moving party has asserted facts showing that the non-movant's claims or affirmative defenses cannot be sustained, "the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted), as is "mere speculation or conjecture as to the true nature of the facts." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts -- "facts that might affect

the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"An insurer's duty to defend claims made against its policyholder is ordinarily ascertained by comparing the allegations of a complaint with the wording of the insurance contract."  Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 144 (2d Cir. 2004) (citation omitted).  The initial interpretation of an insurance contract is a matter of law for a court to decide, "and if the wording on the duty to defend is clear and unambiguous, it will be enforced according to its terms."  Id. (citation omitted).  Although the duty to defend is broader than the duty to indemnify, and is triggered when an action seeks damages "potentially within the indemnity coverage," it is limited absolutely by the scope of the coverage purchased by the insured.  Id.  The insured bears the burden of showing that the insurance policy covers a loss, but doubts are resolved in favor of the insured.  MBIA Inc. v. Fed. Ins. Co., 652 F.3d 152, 158 (2d Cir. 2011).

I.    Kinsale's Cancellation of the Policy

Kinsale effectively cancelled the Policy prior to the injuries alleged by Gaskin and Green.  Under the Policy, Kinsale had the right to cancel the Policy if OBMP failed to pay the required premiums.  To effectuate a cancellation, Kinsale was

required to send written notice to OBMP's last known mailing address at least ten days prior to the cancellation date.  The parties do not dispute that OBMP failed to pay the required premiums and that Kinsale mailed a notice of cancellation to OBMP's last known mailing address on March 18, 2014, more than ten days prior to the cancellation date of March 31.  Under the Policy, Kinsale was permitted to determine the date of cancellation.  It is undisputed that the notice of cancellation provided that the Policy would end at 12:01 a.m. on March 31, 2014.  Finally, it is undisputed that Gaskin and Green's injuries occurred around 2 a.m. on March 31, approximately two hours after the cancellation of the Policy.  Accordingly, under the unambiguous terms of the Policy, the injuries suffered by Gaskin and Green fall outside the scope of the Policy, and Kinsale has no duty to defend or indemnify any of the defendants for the claims brought by Gaskin and Green in the Underlying Action.

Gaskin and Green raise two arguments in opposition to Kinsale's motion.  Neither has merit.  First, Gaskin and Green argue that although the notice of cancellation stated that the Policy would expire at 12:01 a.m. on March 31, 2014, New York law requires that the Policy remain in effect until midnight of that day because Kinsale did not have the contractual right to unilaterally designate a specific time when the Policy would be

cancelled.  In support of this proposition, Gaskin and Green

rely on Savino v. Merchants Mut. Ins. Co., 44 N.Y.2d 625 (1978).

Savino involved a situation where a shopkeeper, Savino,

sent a notice of cancellation, via an agent, to his insurer.

The notice provided that the policy would be cancelled at 12:01

a.m. on December 3, 1974.  The insurer did not receive the

notice until approximately 10:30 a.m. on December 4, and

Savino's shop was damaged in a fire later that day at

approximately 8:30 p.m.  Id. at 628.  The court in Savino held

that the cancellation did not take effect until midnight of

December 4 because (1) a request for cancellation by an insured

is not effective until actual receipt by the insurer,

irrespective of the intention of the insured, and (2) in the

absence of an express agreement to do so, the law does not

recognize fractions of a day.  Id.

Savino is not controlling because OBMP had actual, prior

notice of the cancellation.  Moreover, the court in Savino noted

that "of course, it is recognized that the parties may

particularize as to the time of day when a cancellation is to be

effective."  Id. at 630.  Under the terms of the Policy, the

parties here agreed that if Kinsale cancels the policy due to

OBMP's failure to pay premiums, Kinsale may set the cancellation

date in the notice of cancellation, and that the Policy would

terminate on that date.  Finally, New York courts do not

reflexively apply a "midnight rule" and do enforce mid-day cancellation times when, as here, the parties agreed to their imposition.  See, e.g., 2-10 Jerusalem Ave. Realty, LLC v. Utica First Ins. Co., 878 N.Y.S.2d 358, 359 (App. Div. 1st Dep't 2009) (enforcing insured's request for retroactive cancellation as of 12:01 a.m.).

Gaskin and Green's second argument, raised in their counterclaim but not in opposition this motion, is that the notice of cancellation was ineffective because it did not comply with New York Insurance Law § 3426, which provides that "no notice of cancellation shall become effective until fifteen days after written notice is mailed or delivered to the first-named insured and to such insured's authorized agent or broker."  N.Y. Ins. Law § 3426(c).  The same section further provides that "[t]his section shall not apply to . . . policies written on an excess line basis."  Id. § 3426(l)(2).  The parties do not dispute that Kinsale is an excess and surplus lines insurer.

Gaskin and Green further argue that even if Kinsale is an excess and surplus lines insurer, it is also a "risk retention group" as defined by New York Insurance Law § 5902(n), and as such, was required, under § 5905, to include a notice on the first page of its policy.  Even assuming this is the case, it is not a basis to impose the fifteen-day notice requirement before cancellation, which excess and surplus line insurers, such as

11

Kinsale, are expressly exempt from under § 3426(l)(2).
Accordingly, the Policy is not subject to § 3426(c) and the
cancellation of the Policy need only comply with the terms of
the Policy itself.

## II.   Limitation on Liability for Injuries Caused by
Assault/Battery

Kinsale argues that even if the Policy covers Gaskin and
Green's injuries, its potential liability is limited to $25,000
for each occurrence.  Green argues that there is a genuine
dispute of material fact as to whether the assault on Gaskin was
the proximate cause of her inquiries.  Having concluded that the
Policy was cancelled prior to both Gaskin and Green's injuries,
this issue is moot.

## III. Gaskin and Green's Counterclaims

For the reasons already stated, none of Gaskin and Green's
counterclaims has merit.  The first counterclaim seeks a
declaration that the Policy did not lapse until midnight on
March 31, 2014.  As discussed above, the terms of the Policy
permitted Kinsale to choose the effective date and time of
cancellation by mailing a notice of cancellation to OBMP.  The
notice mailed to OBMP stated that the Policy would be cancelled
at 12:01 a.m. on March 31, 2014.  The second counterclaim seeks
a declaration that Kinsale failed to comply with New York
Insurance Law § 3426(c).  As an excess and surplus line insurer,

12

Kinsale is exempt from the requirements of § 3426(c).  The third counterclaim seeks a declaration that Green's injuries are not subject to the assault endorsement limiting Kinsale's liability to $25,000 for Green's injuries.  As discussed above, this issue is moot because the Policy was cancelled before Green's injury occurred.  The fourth counterclaim seeks a declaration that the assault on Gaskin was not the proximate cause of Green's injury. This claim is also moot because the Policy was cancelled before Green's injury occurred.  The fifth and final counterclaim seeks attorney's fees because Gaskin and Green have been cast in a defensive posture due to this lawsuit.  Because all of their claims lack merit, Gaskin and Green are not entitled to attorney's fees.

## Conclusion

Kinsale's April 30, 2014 motion for summary judgment is granted.  Kinsale has no duty to defend or indemnify any defendant in the Underlying Action.  Gaskin and Green's counterclaims are dismissed.  The Clerk of Court shall close the case.

Dated:     New York, New York
           March 22, 2016

_____
          DENISE COTE
   United States District Judge

13